No. 10,600.

WESTESEN *v.* OLATHE STATE BANK.

Decided May 5, 1924.

Action on contract. Judgment for plaintiff.

*Reversed.*

1.   DAMAGES—*Exemplary—Contract.* Action on contract against a bànk held not to involve such wrong as would entitle plaintiff to exemplary damages under § 6307, C. L. '21.

2.   *Breach of Contract.* Where a bank in violation of its contract refused to credit plaintiff's account with the amount of notes given it to defray the expenses of a trip to California, the jury might reasonably conclude that it was within the contemplation of the parties that plaintiff should spend at least enough time in California to justify the expense of going and returning.

3.   *Breach of Contract—Jury Question.* Where a bank violated its contract to credit plaintiff's account with the amount of his notes given for funds to defray the expenses of a trip to California, it was a matter for the jury to determine what proportion of the expenditures should be allowed him as damages.

4.   *Speculative.* Where the cause of the damage is established, uncertainty in the amount is no objection to a recovery.

5.  CONTRACT—*Breach—Damages—Defense.*  In an action against a bank for breaching its contract to credit plaintiff's account with the amount of his notes given for expenses of a trip to California, it was no defense that plaintiff remained in California for some time and received some benefit from the trip by means of funds other than those to have been derived from the cashing of his notes.

6.  BANKS AND BANKING—*Presentation of Check.*  In an action for damages for the refusal of a bank to honor a check, presentation of the check was unnecessary where the bank had stated it was not good.  Parties are not required to perform futile acts.

7.  EVIDENCE—*Admissibility.*  In an action against a bank for violation of its contract to credit plaintiff's account with the amount of notes left with it as should be required, evidence of defendant as to a change of policy on account of changed conditions in the country, held inadmissible.

8.  BANKS AND BANKING—*Contract to Loan Funds—Breach.*  A bank having made a contract to loan funds, a change of business conditions in the country would not justify or excuse it for a breach of the contract.

*Error to the District Court of Montrose County, Hon. Thomas J. Black, Judge.*

Messrs. CATLIN & CATLIN, Mr. CHARLES L. BLAKE, for plaintiff in error.

Mr. EDWARD M. SHERMAN, for defendant in error.

*Department Two.*

MR. CHIEF JUSTICE TELLER delivered the opinion of the court.

THIS cause has been before us before, and is reported, under the same title, in 71 Colo. 102, 204 Pac. 329, where we reversed a judgment of dismissal entered upon the sustaining of a demurrer to the complaint.

The plaintiff in error alleged in his complaint that, having planned to take an extended vacation in California, he made a contract with the defendant bank to loan him money for the trip.  Under that agreement he executed and left with the defendant his five promissory notes for

$1,000 each, which were to be successively cashed, for the benefit of his account, whenever it became necessary to keep it good.

Having gone to Los Angeles with his wife, he purchased an automobile, and gave therefor his check on the defendant for $1,725, leaving the automobile in the possession of the vendor until the check was paid, or ascertained to be good. On the same day he gave a check for $1,150 for a second automobile, which he had arranged to substitute for the first one purchased. An inquiry by a California bank of the defendant bank brought the reply that the $1,725 check was not good; and the second check was, when presented at the defendant bank, refused payment for lack of funds. Plaintiff claimed $1,200 actual damages and $5,000 exemplary damages.

The jury returned a verdict for the plaintiff in the sum of $10, and judgment was entered accordingly.

The court instructed the jury that they should not consider any sum expended by the plaintiff on his vacation except an item of $10, which he paid for the examination of one of the automobiles purchased.

There was left for the consideration of the jury only the question of general damages, not including exemplary damages, which, though sought, are not recoverable in this action. The case involves no such wrong as the statute (Section 6307, C. L. 1921) and the general rule contemplate.

The court also instructed the jury that any damages allowed should be such as might reasonably have been contemplated by the parties at the time of making the contract for the loan. This seems to be in conflict with the instruction which allows but $10, as damages from the sum expended. If the jury found that the contract had been made substantially as alleged, and they must have so found, since they found the issues for the plaintiff, they might reasonably have concluded that it was within the contemplation of the parties that the plaintiff and his wife would spend at least enough time in California to justify the expense

of going out and returning. The evidence shows that they arrived in California on April 28th and reached home on June 6th. The fact that they stayed some time, and received some benefit from their expenditure of railroad fare, etc., seems to have been regarded by the court as eliminating the question of damages from expenditure, except as to the one item. Inasmuch as plaintiff might reasonably have been found entitled to damages in the sum of his expenses out and back, had he returned immediately, it would seem that it was a matter for the jury to determine what proportion of that expenditure should be allowed him as damages as a result of the act of the defendant in refusing to comply with its contract to furnish money for a longer stay.

What he lost by the acts of the defendant, however, innocently done, was the greater portion of the vacation for which the contract was made. If the value of the vacation is not susceptible of definite proof, it may be approximated by considering what sum the plaintiff considered it worth as shown by the arrangement for a large sum to be expended, and, more definitely, by the fact that he actually incurred an expense of a considerable sum in railroad fare. The amount thus expended is to be considered not as a sum to be recovered, *eo nomine*, but as bearing upon the value of the vacation.

Manifestly, if plaintiff and his wife had returned as soon as the contract was broken by the bank, they would have received little or no benefit from the expenditure in going and coming. How much they lost by being compelled to return in four or five weeks may be, in a sense speculative, and yet it seems it might be determined approximately. Where the cause of the damage is established, that the amount or extent of damages is uncertain is no objection. "Uncertainty as to the amount of damages is not an obstacle in the way of their allowance. Uncertainty as to the cause from which they proceed is what has occasioned trouble, and only when it cannot be ascertained with reasonable certainty that these have sprung from the breach

alleged are they to be rejected as too remote, or conjectural or speculative." *Rule v. McGregor,* 117 Iowa, 419, 90 N. W. 811; 17 C. J. 756.

In *Denver v. Bowen,* 67 Colo. 315, 184 Pac. 357, we said that the fact that such loss cannot be exactly determined is no reason why a wrong should go unredressed, or the wrongdoer escape entirely at the expense of his victim.

It is no defense that the plaintiff remained in California for some time, because he had money for the payment of expenses aside from that for which he had contracted. The natural result of the breach of the contract was to bring the plaintiff and his wife home at once. That they were enabled to get some benefit from the trip is due entirely to the fact that they had funds other than those to be derived from the cashing of the notes left with the defendant bank.

The court further instructed the jury that under the evidence no damage could be collected because of the nonpayment of the first check. The evidence shows that plaintiff, when informed that this check had been refused, telegraphed the bank to stop payment of it; hence it was never formally presented for payment. This instruction is defended on the ground that presentment and dishonor were pleaded, and not proved. Counsel rely on 8 C. J. pages 906 and 977. The cases there cited are not in point, because they deal with the question of presentment necessary to bind a party to a dishonored note or bill other than the maker or drawer. The question here is simply whether or not the legal effect of the telegram, declaring that the check was not good, was a breach of the contract. A presentment would have made no change in the situation, and parties are not required to perform futile acts. To hold the plaintiff to proof of presentment is not in accord with modern views of practice. Courts are now supposed to try causes so as to settle material issues, rather than to encourage casuistry, and reliance upon technicalities which have no practical bearing upon the cause.

The instruction above discussed is repeated, in effect, by

Instruction No. 18½, which limits the jury's consideration to the dishonor of the check for $1,150.

Instruction No. 25 was that it was the duty of the defendant to stop payment on the check for $1,725, and that no damages could be recovered for its nonpayment, or on account of the telegram sent by defendant stating that the check was not good. For the reasons above stated the instruction did not state the law applicable to the facts.

The court erred in admitting evidence of a changed policy on the part of the defendant because of changed conditions in the country. True, it was admitted as bearing only on the question of exemplary damages, but, as is above stated, the question of exemplary damage was not involved. Had it been so, the evidence would still have been inadmissible. The testimony of witness Darrow, who was in charge of the bank, sent the telegram, and refused the $1,150 check, was that when he sent the telegram and when he refused payment of the second check, he knew nothing of the deposit of the notes. There was, therefore, no reason for attempting to excuse those acts on the ground of a general change in banking policy. The defendant was not at liberty to question the testimony of its own officer on that point, and testimony to show another reason for his action was inadmissible, because not material. Having made a contract to loan the required funds, a change of business conditions in the country would not justify, or excuse the bank for a breach of the contract. The testimony might well have been regarded by the jury as excusing the action of the defendant, though not the cause of such action.

For the reasons above stated, the judgment is reversed.

MR. JUSTICE WHITFORD and MR. JUSTICE DENISON concur.